The court now calls case 117090 Anthony Lutkauskas v. Dr. Timothy Ricker. Are the parties ready to proceed? I note that the appellees have asked and received permission from more than one attorney to argue. It will be your responsibility to keep track of your time. You may proceed. Thank you, Chief Justice Gorman. Chief Justice Gorman, may it please the court. I'm Clint Krislov. I'm here on behalf of the taxpayers, who actually are here with us today. And we're here also for the Center for Open Government Law Clinic at Chicago-Kent Law School, whose students have assisted in this case materially. This is a taxpayer action brought pursuant to and to enforce the school code's working cash statute. What is squarely at stake here is the legislature's absolutely clear prohibition on what the defendants did here, which was use the district's working cash fund as a slush fund to just spend it. And all the defenses that they assert, all the ones that they throw out, every single one of them, ignores the legislature's clear directive and should be rejected. One of the things that the statute itself on its face could not be more clear. In fact, all their defenses dealing with the statute would be answered by, if there's something more that the statute was intended to require, please tell us. The legislature said any ill intentional diversion from the working cash fund subjects the person, board members who approved it, people who spent it, anybody else who's connected to it, subjects them to personal liability. That's it. It doesn't say, and with all the baggage and accoutrements they would tack on to it and conditions, that the spending would be for non-school purposes. Well, if it's for non-school purposes or embezzlement or whatever or vacations or drinks or whatever else, the statute would be superfluous. It wouldn't be necessary. There's protections against that throughout the state code. The purpose of the working cash fund is one thing and one thing alone, which is, as this district did some years ago in the late 1990s, it issued a bond, it borrowed $5.5 million to have a working cash fund, which is there by law to just loan to other school funds in between receipt of taxes. That's what it's there for. And any transfers from the working cash fund to another fund for another expenditure has to be documented by specific board approvals of each transfer specifying why the money is needed now, how much is being loaned to the particular other fund, and the statute requires that as soon as the tax receipts come in that it is paid back to the working cash fund. Instead, what the board, what the defendants here did was just sort of treat this as if this is the family checking account and we just keep spending it as long as we've got money. And they spent beyond the legal appropriations. Now, the defendants say, well, what's the damage? What's the harm? It would be a windfall if the district got this money back. But it's not because what happened here is that the board approved spending beyond the legal appropriation for particular amounts in any number of ways. But all we know is that the board spent more than was legally authorized to be spent for specific purposes. And who's awake at this switch? That's the purpose of the statute is to make sure that there is not just a red light camera and a crosswalk and pictures of school children and a crossing guard. The statute is very clear. If you spend working cash money, if you divert working cash money, you're personally responsible. Mr. Kutzoff, the school code also provides that the taxpayer can bring the action in the name and the benefit of the school district. We understand that. But the injury suffered is to the school district, not the plaintiffs. So if that's so, what injury was suffered by the school district by the transfers that were made without the resolution? Because the district's money was spent for illegal purposes. The appropriation each year identifies fund accounting, identifies how much is going to be spent for education purposes, transportation, maintenance. Each thing is a separate appropriation. That is how much you get to legally spend of the district's money each year. If you spend more than that, you violated the law. You've exceeded the district's legal spending. And when you take it from the working cash fund, which obviously occurred here because when you go to the- Yes, yes. And what was the injury to the school district, even though it exceeded the amount? Well, then it would always exceed the amount. Any amount that exceeded the legal amount would be an injury to the district because money of the district was spent for an illegal purpose. Okay, so that also brings us to the idea that this cash fund has been abolished. And so how does that affect this appeal? Is there a mootness problem? No, because in the West Chicago case, which is GIS Venture against NOVAC, which is 388 Illinois Appellate 3rd 184, they talked specifically about this idea of abating or abolishing the working cash fund after the money's been illegally spent and that allowing circumvention of the prohibitions so easily would- they refer to it as allowing a repeated phoenix. So what the district-what the board members would do is say, look, we know we only-we have $15 million that's legally taxed each year, and we have about $20 million to spend. We're going to ignore that. We're going to spend-oh, and we have authorized spending of X amount of dollars, 20 million said. Oh, we're going to spend 25. At the end of the year, we have no money left. We've obviously spent it out of the working cash fund. Well, we violated the law, but we grant ourselves a pardon, absolution, whatever. We'll just abolish the working cash fund after it's been illegally spent. Doing that. And so then next year, the damage is that the taxpayers now have to raise again that $5 million. Every year that they spend in this fashion and take it from the working cash fund, the taxpayers are going to have to raise not only the $5 million that they borrowed in the past that was spent, but they do it again this year, they've got to raise another $5 million. And that's why we attached our accounting experts' identification that this totaled $18 million for this school district, which is about the amount of one year's whole tax levy. And the second district said that there's no right of sort of self-help pardoning yourself for the violation of that law. It would be too easy to just say, but we're going to ignore the low. We're going to spend whatever we want. We're going to spend the working cash fund, and then we're going to pardon ourselves at the end of the year by violation. Mr. Krislav, would there eventually have to be a determination as to whether each alleged illegal spending item, for example, you said crosswalks, crossing yards, whatever, to make a determination whether there indeed would be a windfall to the district? I mean, presumably they're spending the money outside of the way it should be spent. Right. But they're spending the money that at least some of those items probably could say, well, that's still a benefit to the school district, right? We, on the record, we don't know how it was spent. What their position is, is to say the burden in these cases is you must not only allege that the working cash fund was spent, you must also allege that it was spent for a non-school purpose. At this point, we don't know exactly what occurred. We do know that there was spending in each of two or three funds for millions of dollars beyond the legal appropriation. Now, whether you'd say, well, the school district got the benefit of that spending, on this record, that doesn't exist. This is a question of whose burden at the pleading stage it is to show that money has been spent for non-school purposes. The answer, I think, and the right answer, I believe, is that if you spend money beyond the legal appropriation for a certain purpose, you have violated the law. You're not doing, you're doing something that is illegal. You're spending taxpayers' money. Otherwise, how is there accountability to the taxpayers? The taxpayers. I'm only talking with respect to the whole windfall issue, right? And it seems like your position is if it's illegal spending, you don't care if it was a benefit to the district or not. Is that your position? Yes, if it's illegal spending from the working cash fund. If you drain the working cash fund without going through the procedures to loan it to, to specifically loan it to specific funds and then pay it back, you violated the law. You don't have to show a windfall in that situation. The working cash fund is therefore just the purpose of financing operations between tax receipts. You have to. If you're going to spend from the working cash fund, you have to identify what is being spent, what is being borrowed to another fund, and then you have to pay it back. You can't just say, well, we got to the end of the year. We had $20 million to legally spend, but we spent 25. There's no money in the till. Also, as a matter of law, I think we would get summary judgment without a problem on the fact that they violated the working cash fund provisions. Now, to have to show, to then say, well, it would be a windfall to pay it back because we bought books, we bought more buses, we bought whatever, if that were the law, then there really is no accountability. There is no accountability for, there's no discipline to legal spending. There has to be. And you can say, look, the working cash fund is a slush fund. Use it however you want. Have a nice day. God bless you. It's been nice. And that's the cushion. But that's not what the legislature said. The legislature, this is one of those cases. In fact, the only mention that this Court has had of the working cash provision has been in May generally speaking, public employees who are part of spending money that happens to wind up being illegal or excessive aren't personally liable. And this Court distinguished those cases where all those general liability and general immunity, common law immunity, all those stuff that the defendants here cite, they get trumped by the fact that the legislature said working cash fund is to be used as follows. It exists for this purpose. If you want to take the money from the working cash fund and do something with it, you have to loan it to a specific fund and you have to pay it back when the tax receipts come in. Counsel, your argument, as you say, is that it's not necessary to show damages. There was a violation of the statute, and that in and of itself is the basis of your cause of action. But my question is, how would damages ever be determined? So, for example, $5 million comes out of this fund. It's put into a general revenue fund of some sort, and money is bought, as you say, buses and school books and appropriately spent. How would this affront that the statute was violated, how would that ever be quantified in damages? It's very easy. We had $25 million in the district's assets at the beginning of the year. $5.4 million was the working cash fund. That was spent. It wasn't transferred. It wasn't even flipped into one of these other funds. It's just what they did is they treated the whole thing as one big family account, and they just spent without discipline. And so the amount that was in the working cash fund that is no longer there, that's the damages. You spend taxpayer money illegally, you're violating the law. It's not a – you don't have to go through and say, well, you know, this book we had – you don't have to show that you bought 39 books for 38 students in that case. You know, if the spending – and taxpayers are entitled to money to be spent legally. And when they – when a budget is approved, that's a transparent – it's an open – the issue is open, transparent government. And when the district says, we are going to spend your money, we are going to spend during the course of the coming year, we are going to spend $20 million in the following four or five fund ways. Fund accounting is very specific. You have a legal appropriation for a specific purpose. If you want to spend money for one purpose, for a different purpose, you have to make an open government legally transparent action so that the taxpayers know how their money is being spent. In this case, say, well, they had appropriated $20 million for spending. They have $5 million that is sitting in the working cash account. And in this case, the – it actually comes back to your question because this was shown – the question about abating. I'm sorry to shift back to it. But the question about whether you can abate liability. Their position is, well, if we overspent, what the heck, we can abate the liability. The way that this came up was that the district, the board, announced that they were going to go out with tax anticipation notes. And somebody in the back of the room basically raised their hand and said, you can't do that. You can't issue tax anticipation notes, borrowing again, if you already have a working cash fund. The purpose of the working cash fund is the same thing as tax anticipation notes. We're funding operations to loan to the different operating accounts that have been appropriated from the working cash fund. The – you don't have to identify each expenditure. You just – it's very easy to say at the end of the year, look, there's no money, and there's no money left. And, in fact, that's what happened. I mean, that's why the accounting firm is here, because it didn't take anybody else doing much more than balancing the checkbook to say, look, money has been spent beyond the legal appropriations, and it got taken out of the working cash fund because we don't have any money. You referenced that this is against the law or violates the law. Yes. There are criminal sanctions in this statute. Why are they insufficient? Because on a practical level, the state's attorney generally will not prosecute for, as I understand it, the rule they adopted was for less than $20 million in damages. The criminal statutes are insufficient and, you know, they exist, no doubt. But if the legislature was content to say, well, we'll just wait until it's criminal, until the state's attorney does it, the fact is that's why you have taxpayer actions, because taxpayers, it's their money, and they are in a great position, as these taxpayers were, to say, look, this is illegal action, this is action, and the legislature said we want to have taxpayer actions to enforce the statute. Why require the state's attorney to do all the work? Why require the attorney general to do all the work? Taxpayer actions are a traditional means, certainly in Illinois, and you could say by common law, taxpayer actions, I mean, we love them. They accomplish their purpose. They enforce the law. They impose discipline. But the fact of the matter is the legislature very clearly said taxpayers have a right to this action. Counselor, you started your argument, or I thought you did, maybe based upon the brief, that this violation was the failure to adopt the resolution to transfer the money to where it was going to be ultimately spent and then to provide a means that the money would come back. But then you seemed to shift to talking about legal appropriations. Now, appropriations made are legal appropriations, I take it, once the appropriation is made. But your argument seems to be they spent in excess of the appropriation amount. Is that the harm that was done, or is it the failure to adopt the resolution? Having chickens and eggs. The violation is spending working cash fund money, is diverting working cash fund money, not in accordance with the law. Which is failure to adopt a resolution? Failure to adopt a resolution because the money cannot be legally transferred out of the working cash fund except by a formal resolution. Had the expenditure been within the amount of the appropriation, would that be your only complaint then? If the expenditures had been within the, I mean, the answer is yes, but no, there would have been, then the money wouldn't have been illegally spent. They, if you only have $25 million, if you only have, if you have $25 million and 20 of it you can legally spend. Because of the appropriation amount. Yes. If you spend more than that. Now, they could during the course of, may I continue to answer the question? Please. I mean, they certainly could if they, you get to the end of the year, you get to a point at which you say, oh, my God, we didn't appropriate enough in this account, we need to transfer over, the board can do that. But it's a public, it's a public action with board consideration that the taxpayers can see. Thank you. Thank you, Counsel. May it please the Court, Counsel, my name is James Petrangaro and I represent the individually named school district defendants, with the exception of former Superintendent Dr. Ricker, who is separately represented. Your Honors, my clients urge this Court to affirm the decisions below and submit that there are several grounds upon which that may happen. I first would like to address the posture of this case before the Court. This is not a taxpayer challenge to an excessive fund levy. This is not a challenge seeking to obtain a reimbursement to taxpayers, or to make taxpayers full. This is a challenge filed on behalf of the school district. It's a derivative challenge. And as such, the plaintiffs have to establish standing, in other words, harm to the school district. There is no harm that's been alleged and there is no reasonable set of facts that can be alleged to establish that there is harm to the school district. Specifically, plaintiffs allege that the Board of Education encountered excess spending, deficit spending, and relied upon the working cash fund to do just that. Plaintiffs allege that that's using the fund as a slush fund and that that's a violation of the working cash fund. Had they brought their case any time prior to 1949, I might be inclined to agree with the plaintiffs. But in 1949, the legislature amended Article 20 to permit school districts, school boards, to permanently abolish the working cash fund. And upon doing so, 100% of the balance of that fund goes to the education fund. In other words, the working cash fund can be used to supplement the operating funds of the district. This court in 1950, in its Bell decision, determined that that action is not inconsistent with the original intent of the legislature. Fast forward to 1984, in the Walgenbach case, this court again recognized a school district's ability to abolish its working cash fund. More recently, in 2010, the legislature codified what was always implied by Section 20-9, and that's a school district's ability to abate the working cash fund to its operating funds. And in 2010, said that the district can do so to the fund, any fund, any operating fund that the board determines to be most in need. So it is not counter to the intent of the legislature that a board of education or its administration collectively use funds in the working cash fund to supplement its operating funds. That's entirely consistent with the purpose of the statute. Because those funds, therefore, the dollars at question, have not been illegally spent. They've been spent consistently with the intent of the legislature. It cannot be said that there's a damage to the school district. Therefore, the plaintiff's lack standing in this case is not justiciable. The ultimate question in this case is whether there was a, quote, unlawful diversion. And I submit to this court that there are two principal reasons why there was not an unlawful diversion in this case. First of all, consistent with this court's previous determinations, dating back as far back as 1932 in the Gates v. Schweitzer case, an unlawful diversion occurs only where the original or the intent of the legislature in creating the fund has been permanently frustrated. The working cash fund for school districts is unique. It's different from municipalities. Counsel argues the Mahan case versus Baltus. This is unique in that the legislature has expressly permitted school districts to rely on the working cash fund to supplement their operating funds. Because the money at issue, or in question here, was used on legitimate school-related purposes, and counsel hasn't alleged otherwise in this complaint, and he implies not only today but in argument before the courts below, that that, in fact, is what's happened here, particularly because, as counsel points out in the complaint, the board allegedly agreed to a robust collective bargaining agreement with its teachers that it simply couldn't afford, there's little question that the dollars at issue were actually spent on legitimate school-related purposes. And therefore, pursuant to this court's decision in Gates and the decisions that came thereafter that the appellate court relied upon, there has been no unlawful diversion of funds in this case. Now, there's an argument that's raised by counsel and that has been raised by the court as well. Well, there was apparently a lacking resolution authorizing those transfers, as is required by Section 20-5. But that doesn't make the transfer of the funds an unlawful diversion, and that is what's required in Section 20-6. It has to be an unlawful diversion. The legislature, and I'm getting to my second point now as to why there wasn't an unlawful diversion, was very careful to bifurcate the remedies in 20-6. The criminal penalties that are provided initially in that section state that upon any violation of the article, there may be the loss of office or a fine of up to $10,000 imposed, and counsel has acknowledged that that's to be brought by the state's attorney. That would be the appropriate remedy, perhaps, for a transfer of funds without an authorizing resolution. That's arguably a violation of the statute. But the legislature was then careful to use separate language as to what is an unlawful diversion. In a civil recovery, as the plaintiffs are pursuing here, imposing liability personally on 10 former public servants, that specifically requires an unlawful diversion. In the legislature's use of separate language in referring to a violation in the first part of that enforcement section and a diversion or an unlawful diversion in the second sentence suggests plainly that legislature intended there to be a difference between those two. Plaintiffs, their whole argument is an attempt to fit a square peg in a round hole. They're bringing this case initially before the circuit court and now before your honors, arguing that this is all about excess spending, deficit spending that the Board of Education can't engage in. That's not what Article 20 is about. Article 20 is narrowly about the use of a working cash fund. There is no action for deficit spending. There's no action that can be brought against the Board of Education for deficit spending. That's why the plaintiffs have attempted to bring their action under Article 20. I further submit to this court that to the extent there was a lacking authorization in a public resolution, that that was cured by the Board of Education, the actions of its administration. By entering an abatement resolution, there's no allegation in the complaint that that resolution was at all improper or unlawful pursuant to Article 20. And then a few months later when the board permanently abolished the entire fund, sending the balance to the education fund. Those resolutions under the doctrine of ratification become effective back to the dates that any draws upon the working cash fund were made without the resolution being on file. I also submit to this court that the very relief the plaintiffs are seeking is the same action that they argue is illegal. Because the fund has been abolished, the relief, if any in this case, would be the personal liability, the dollars to be recovered to the school district would be sent to the education fund because there is no working cash fund at this school district anymore. So if we're going to impose liability on defendants and require them to send money, reimburse the district, and that money is going to the education fund, then that's the very remedy, that's the very action that they argue shouldn't have happened in the first place, that this money should be sitting back in the working cash fund. But because that fund's been abolished, that remedy can't be had. Is it difficult for the plaintiff to – we're at the pleading stage here, right? Correct, Your Honor. Is it difficult for the plaintiff to allege sufficient facts for unlawful diversion if they're in the hands of your clients as to what exactly occurred? It's not difficult, Your Honor, and for a few reasons. First of all, one of the plaintiffs was a board member at the time this was all happening. Plaintiff Hughes was a member of the Board of Education. She had intimate knowledge as to what was happening. Secondly, the doctrine or the legal – the Latin phrase, a dominant injurious applies in this case. There may be a loss of funds to the school district because the working cash funds and the dollars were spent legitimately. But that doesn't mean there was an injury to the school district. And so I submit to this court that there is no reasonable set of facts that the plaintiffs can allege outside of alleging that the dollars were spent impermissibly on private vacations or that the money was transferred from the working cash fund to support its operating funds when those funds were not depleted. It would be one thing if those funds all had large fund balances, reserves, and this money was taken out of the working cash fund. That's not what's happened here. The plaintiffs allege that the district was running out of money and that's why they relied on this money. Under your description there, wouldn't accounting purposes, wouldn't all those transfers be public documents anyway? They are public documents. Not only through the – Even if you used the money for a hotel or dinner or whatever, that would be still public, wouldn't it? It's public through the budget documents, the annual financial reports that the districts are required to have annually that are posted on the district's websites. And I also note on that issue that the purpose of the statute is to recover funds for the school district. While certainly a resolution would provide transparency to taxpayers, that's not what the purpose of the enforcement provision in 20-6 was intended for. It's not to recover funds for taxpayers. It's to recover funds for the benefit of the school district. If there's no further questions, I'll cede my time to my co-counsel. May it please the court, Melinda Cole-Ross representing Dr. Ricker, the former district superintendent, and I agree with the position expressed by counsel. I only want to distinguish Dr. Ricker's position. Under Section 25-5 of the school code, it says monies in the working cash fund shall be transferred to another fund of the district only upon the authority of the school board, which from time to time by separate resolution direct the school treasurer to make transfers as may be required. Well, Dr. Ricker was not a member of the school board. Dr. Ricker is not the school treasurer. So he is not subjected to the directives of Section 20-5. He doesn't fall within either category. He was not a spender of the money, not a transfer of the money, and not a potential authorizer. Only the board could do that. So he is separate and stands alone in his particular status. The plaintiffs never addressed this. They just lumped all the defendants in together and make those allegations as to everyone. And so first of all, he's not required to do anything under the statute, so he can have no liability. Secondly, even if the court were to find that he had some sort of duty under the statute, he's entitled to immunity because, once again, his action is limited by the plaintiff's allegations to budget making, and that's a discretionary policy-based function, which entitles him to tort immunity, it entitles him to common law legislative immunity, and the argument that plaintiff has raised that somehow this is a ministerial function, board resolution required in order to make these transfers, once again, he was not a member of the board. He's not the treasurer. Dr. Ricker had no ministerial functions to be performed. So, again, we just want to make those distinctions because plaintiff did not, and so there can be no liability against Dr. Ricker under any view of the facts or the allegations made. Thank you, Your Honors. Thank you. Good morning, Your Honors. Melissa Murphy-Petras on behalf of certain underwriters at Lloyd's. Unless Your Honors have any particular questions with respect to the treasurer bond issued to Mr. Beckwith, I will rest on my brief, as well as on the briefs and arguments of co-defendants. Thank you. Thank you very much. May it please the Court, Counsel. My name is Tom Falkenberg, and I represent the accounting defendant in this action, Knutty & Associates. Knutty & Associates is in this matter on raised judicata issues. For raised judicata to apply, there's three elements that are addressed in the briefs. I submit to this Court that two of the three issues have already been waived by the plaintiff's counsel. The first issue is finality on the merits. This was an issue that was never brought up at the circuit court level in the second action. It wasn't brought up on appeal. It was brought up for the very first time before the Supreme Court. So on that basis alone, it's waived. In fact, it's beyond a waivable issue. It's an admission. In the underlying action, your honors have the transcript from the hearing before the circuit court judge. Mr. Krizlov admitted this issue had been met. So this is a non-issue. There was a final judgment on the merit in the initial action in which the Knutty defendants obtained a dismissal. The second element is identity of causes of action. Here in Illinois, we follow the very liberal transaction test. Is it the same transaction that brings about the causes of action? And it absolutely is. My client, the auditor, audited three years for the district and issued financial statements. It's those same audits that brought about the first two actions that were consolidated that my client had dismissed in a final judgment with prejudice, 304A language, and wasn't appealed. Those same, if you compare the complaints, the allegations are almost identical. So clearly under the transaction test, under the River Park versus Highland Park case, it's the same facts. The only differentiation the plaintiffs try and argue for our situation is in the first action against Knutty, we sued for, in essence, accounting malpractice. And then, though the caucus matter, we brought different causes of action. They alleged breach of fiduciary duty. They alleged aiding and abetting. They alleged, I believe, breach of contract. But clearly under the case law, raised judicata, that doesn't matter. Because raised judicata applies for any cause of action that was brought or could have been brought. You look at the operative facts. Are they the same operative facts? Absolutely. If you compare these two complaints, they are absolutely the same operative facts. In fact, they're even brought by the same counsel. This issue was also admitted to as having been met in the appellate court level. In fact, if you look at the appellate court decision footnote three, the court points out this issue appears to also have been conceded by plaintiff's counsel. The only real issue is whether or not there's identity of the parties or their privies. In this case, there absolutely is. Why? Because this is a derivative action, a taxpayer derivative action. As the appellate court said, the complaint leaves no doubt on this issue. Each suit was brought, quote, in the name of and for the benefit of, unquote, the districts. These weren't taxpayers bringing it on their own behalf. They were bringing it on behalf of the district. Because of that, the case law, again, could not be more clear that we've satisfied this element of raised judicata. In fact, this very issue was decided by a first district case, Nelson v. Chicago Park District. Why is Nelson so relevant here today? Because Mr. Krizlov was the attorney in that case. He cited all the same Supreme Court, the United States Supreme Court cases. They were all clearly distinguished by the court. Not only was this argument, the same argument that was presented to you, denied by the first district, Mr. Krizlov was sanctioned for bringing it. Yet here before the Supreme Court, he brings all the same cases, all the same argument. There is absolutely an identity of the parties here. And that's because the real party in interest is the district. In fact, 20-6 only allows a taxpayer to bring this cause of action on behalf of the district. So there can be no doubt. Every case that they cite, Taylor v. Sturgill, the Richards case, the South Central case, it was all instances where individuals were bringing actions on their own behalf. And in the Taylor case, they talked about this virtual representation issue. That's not present today because the district is the party of interest here. The last issue is there's some relief being asked by the plaintiffs as a result of 304A. That's clearly not an issue. The case that they rely on is a case that was decided before a change in the Supreme Court rules. The rules now clearly provide under 304 that the time for filing an appeal shall be provided by 303, shall, mandatory language. When you look at 303, the notice of appeal must be filed within 30 days. So, again, this 304A issue, which was never brought before today, before the Supreme Court, is another issue that they have in essence waived. But the case law clearly supports that they had a mandatory time to bring an appeal from the original dismissal. They didn't do so. And, therefore, we'd ask that you affirm. And if there are not any questions, I thank you for your time. Thank you. Thank you. First, dealing with Mr. Petrangaro's argument about the lack of damages, who's going to repay the bonds that were issued to fund the working cash fund? Taxpayers are going to have to do that. Taxpayers are going to have to levy on themselves again. They did it once. They're going to have to do it again. And again and again and again. The, oh, the argument that the public annual, the public reports showed the transfers, that's not true. The public reports didn't show any of the transfers. The public reports, the annual reports, do show that amounts were spent beyond the appropriation in, I think, two out of three of the funds. But the public reports that Knudy issued, the board issued, showed a balance of $5.5 million still in the working cash fund. So that somebody going from the public reports would believe that there was still $5.5 million in the working cash fund and that it had not been diverted. In fact, the statute says diverted or otherwise spent, I believe. Any such member or other person shall be liable for any sum that may be unlawfully diverted from the working cash fund or otherwise used. So certainly you spend it on drinks and vacations or whatever. Maybe that's otherwise used. I'll buy that. But diverted from the working cash fund. You spend the working cash fund and there's no money in the working cash fund. It's been diverted. If you want them to make it clearer, please tell us how that could be. This business about Ricker being sort of not in the position that he would be subjected to liability, the statute says any other person holding any office. And he was also at the time, sorry, holding any office or employed by the district. He was also the CFO. So the chief financial officer. So at this point, since we don't know exactly what people knew and when they knew it and what their involvement was, it seems at the complaint stage all that we should be required to allege is there was money in the working cash fund. It is not there now. The money has been spent. And all of the people who were involved in the expenditures of the district's money are fair game to be sued at this point. We may decide down the road based on discovery that expenditures were for non-school purposes or they were for school purposes. And who was involved in it. But at the complaint stage, all we need to allege is that money was wrongfully diverted from the working cash fund without following the legal procedures. And here are all the people involved in the district's finances. If you require more than that, excuse me, you make it impossible to satisfy except for blatant embezzlement, conversion. You know, when people start appearing in Argentina or otherwise beyond the jurisdiction of the Illinois courts, at that point it's too late. Counsel, don't you have to tie your allegations to the statute? And the argument is the statute talks about the authority of the school board. It talks about the treasurer. And pinpoints specifically who has the duties that you say have been breached. You're saying you can sue anyone. Well, anybody who was involved in the district's spending monies beyond the appropriation is not in the self-rendering personally liable, Justice Carmeier. I would agree that merely deficit spending in accounts doesn't subject them. But figuring out, Justice Tice, who was involved of the group that are the core involved in spending the district's money, at the complaint stage we need not show a lot more that we, I can't imagine, I don't understand how a person would be able to show anything sufficient to satisfy what the defendants want you to satisfy. Now the 304 and the Lloyd's business, I suppose if the treasurer is found not liable, I guess Lloyd's probably is derivatively responsible on their underwriting. At this point all we know is the treasurer is clearly in and that implicates Lloyd's. Now the 304 issue, I was the lawyer in the second litigation in Nelson. And I plead not guilty on that one, but that's the fact of the matter there was that there was a settlement of one set of claims and after that the board, the Park District, then entered into a second agreement with the people who had, for whom the Park District had illegally built a soccer field. And the Park District in the second agreement after the first settlement voted to reimburse the Latin School for the money that the Latin School had expended to illegally build a soccer field on public land. That was what we sued in the second case. Nelson, I wasn't part of the first case, but that's what we sued in Nelson, in the Nelson case and that's what the chancery judge found was barred by the first settlement. I think Nelson was wrong, but I plead, I was the lawyer there and I still think that Nelson was wrongly decided. And Nelson is wrongly decided not just on its facts, but the idea of imposing race judicata so easily on people protecting the public fisc is fundamentally wrong. That to say that the people, I mean, I listened to the first case before you this morning too. What I have concluded is that defendant appellees uniformly cite the first case finality as one of the most important things of justice and due process. Here they don't have any of those to bank on. The fact is with the 304A by its language, and as Justice Seymour Simon said in Elgin against Whittington, this is a trap for the unwary. This is a provision in the rules that was patterned after the federal interlocutory appeal provision and if you don't take it up at that point in the federal courts, you can still appeal. You can still take it up on appeal at the end of the case. There are lots of reasons why you may choose not to take it up based on an interlocutory decision. And that provides an avenue. As Justice Simon said, it is... Can I just ask, I'm not quite sure what your argument is. 304A is our rule and it has been interpreted to mean that this is a final order that is certified to be appealed and one must file an appeal in 30 days or lose that ability to file an appeal, correct? No, the rule doesn't say you must file within 30 days or lose the right to file that appeal. You lose the right to interlocutorily file that appeal if you don't file within 30 days. That's what the rule on its face is. So you're disputing the cases that have been interpreted in that way. Yes. And the view that I think is... I think that in adopting rules, rules have to be clear, not nuanced, not interpretable in 60 different ways. They are to provide assistance to the court and the parties in pursuing the case. And if it is to be that the failure to pursue an interlocutory appeal after 304A finding is made, it should be in the rule. Thank you, counsel. Time has expired. Case 117090, Anthony Lakakis v. Dr. Timothy Richter is taken under advisement as agenda number 18. Mr. Pisloff and Mr. Petrangaro and Ms. Kollross, Ms. Murphy-Petros and Mr. Falkenberg, thank you very much for your arguments today and your excuse at this time. Marshal, the Supreme Court will take a 10-minute recess at this time.